

# Missouri Court of Appeals

### Southern District

### Division Two

ROSE FORD,                              )
                                        )
    Respondent,          )    No. SD36080
                                        )
vs.                                     )    **Filed:  February 19, 2020**
                                        )
SKAGGS CHIROPRACTIC, LLC,               )
                                        )
    Appellant.           )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Judge Dean G. Dankelson

## AFFIRMED

In two points, Skaggs Chiropractic, LLC ("Skaggs") challenges the trial court's judgment determining the amount owed to Skaggs as a lienholder by applying Missouri's medical lien statutes to Skaggs' lien.  *See* §§ 430.225-430.250.[1]  Finding no merit to Skaggs' arguments, we affirm the trial court's judgment.

### Factual and Procedural History

Rose Ford ("Ford") was injured in a car crash in August 2013, and sought treatment for her injuries from Skaggs.  As part of receiving treatment, Ford signed an

---

[1] All statutory citations are to RSMo. Cum. Supp. (2013).  All rule references are to Missouri Court Rules (2016) unless otherwise noted.

agreement with Skaggs labeled "Assignment & UCC Lien" ("UCC Lien").[2] The UCC Lien stated that Ford had signed an assignment to Skaggs covering the full amount of its charges, which granted to Skaggs "a primary, non-contingent ownership and security interest." Through the UCC Lien, Skaggs was providing "notice of a perfected lien under the UCC covering our full charges[,]" and expressing the signer's intent to create such a security interest under the UCC.

The UCC Lien described Ford's assignment to Skaggs, to the extent of her charges, as all of her "claims to, rights to, and interests in, [p]roceeds[,]" and these included "without limit any and all causes of action, receivables, payment intangibles, and remedies that I might have against or with respect to any Payer now or in the future[.]" "Proceeds" was defined to include the "proceeds from any settlement, judgment, or verdict," and "Payer" referred to:

> without limit any insurance carrier, health benefit plan administrator and fiduciary . . . attorney, adjuster, claims handler . . . at-fault party, individual, and any other entity, which may elect or be obligated to pay or disburse Proceeds, either now or in the future, or which may be involved directly or indirectly in determining the obligation to pay or disburse Proceeds, either now or in the future.

All Payers were directed to: "pay the Proceeds directly to, immediately to, and exclusively in the name of, [Skaggs] to the full extent of my [c]harges." The UCC lien stated:

> To the extent that any law, ***including without limit a lien statute***, purports to limit, reduce, or modify the distribution of Proceeds in any manner inconsistent with this Assignment Lien including without limit through the reservation of a portion of the Proceeds exclusively to me, ***I hereby waive such limits, reductions, or modifications***.

---

[2] Missouri's Uniform Commercial Code is located at §§ 400.1, *et seq*.

(emphasis added).  While the UCC Lien purported to "waive" the limits of any lien statute modifying the distribution of proceeds, it also reserved the right to assert other potential security interests, by stating:

> Under various circumstances, [Skaggs] may also be entitled to a security interest or lien based on laws other than the UCC or common law ("Other Lien").  Please note that the patient has expressly waived all limitations associated with Other Lien, if any.  [Skaggs] ***hereby claims, without prejudicing any rights we may have under any other law, a security interest under Other Lien law.***

(emphasis added).  Skaggs filed a notice of its UCC lien with the Missouri Secretary of State.

Ford sued the driver of the other vehicle and the parties entered into a settlement agreement in the amount of $7,500.00.  In February 2016, Ford filed a "Motion for Determination of Liens" asking the court to determine the amount of the medical liens held by Skaggs and other providers, using the formula from section 430.225.[3]  Skaggs' attorney entered his general appearance and participated in the hearing on the motion. The court entered its order in May 2016, finding the 2003 amendments to the hospital lien statute "provide an exclusive remedy for health care providers to seek payment out of the proceeds of the personal injury claims of their patients[,]" ***Huey v. Meek***, 419 S.W.3d 875, 881 (Mo. App. S.D. 2013), and set the amount due to Skaggs as $2,083.66.

---

[3] Section 430.225.3 provides:

> If the liens of such health practitioners, hospitals, clinics or other institutions exceed fifty percent of the amount due the patient, every health care practitioner, hospital, clinic or other institution giving notice of its lien, as aforesaid, shall share in up to fifty percent of the net proceeds due the patient, in the proportion that each claim bears to the total amount of all other liens of health care practitioners, hospitals, clinics or other institutions.  "Net proceeds", as used in this section, means the amount remaining after the payment of contractual attorney's fees, if any, and other expenses of recovery.

The trial court entered its Judgment Approving Settlement in the personal injury action on March 14, 2019. This appeal followed.[4]

## Standard of Review

In a bench-tried civil case, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *See **Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976); ***Skaggs 1***, 564 S.W.3d at 635-36. This standard of review applies in "all types of court-tried cases." ***Geier v. Sierra Bay Dev., LLC***, 528 S.W.3d 51, 54 (Mo. App. S.D. 2017) (quoting ***Ivie v. Smith***, 439 S.W.3d 189, 198-99 (Mo. banc 2014)). We review conclusions of law without deference to the trial court and "independently evaluate whether the trial court properly declared or applied the law." ***Missouri Land Dev. Specialties, L.L.C. v. Concord Excavating Co.***, 269 S.W.3d 489, 496 (Mo. App. E.D. 2008).

## Analysis

### *Point 1*

Skaggs' first point on appeal states that the trial court erred in determining the lien amount in this case because the "benefits of the hospital lien had been specifically [']waived[']" by Ford, and Missouri's medical lien statutes, found in sections 430.225–430.250, do not apply to Skaggs' UCC lien.

---

[4] Skaggs' initial appeal of the May 2016 judgment was dismissed by this Court for lack of a final judgment as there was no disposition made of Ford's claim against Bridwell. Skaggs then filed a small claims action against Ford in June 2017. *See **Skaggs Chiro. L.L.C. v. Ford***, 564 S.W.3d 633, 636 (Mo. App. S.D. 2018) ("***Skaggs 1***"). An associate circuit judge sustained Ford's motion to dismiss, and Skaggs sought a trial *de novo*. ***Id.*** When Skaggs appealed the judgment arising from the trial *de novo*, this Court determined the abatement doctrine had been triggered because of the overlap of issues involved in the personal injury action and the small claims action. ***Id.*** at 639. The trial court in this case then entered its final judgment on March 14, 2019, which led to this appeal.

Missouri's medical lien statutes create a "limited exception" to Missouri's general public policy prohibiting the assignment of personal injury claims by giving certain medical providers a lien on "suits or rights of actions for personal injury in the amount of the cost of care provided to the injured person, with certain limitations." *Huey*, 419 S.W.3d at 878-79 (citing §§ 430.230, 430.225.3). These statutes serve a "dual purpose: to ensure that injured patients are quickly treated without first considering if the patients are able to pay and to protect health care providers financially so that they could continue to provide care." *Id.* at 879 (quoting *Kelly v. Marvin's Midtown Chiro., LLC*, 351 S.W.3d 833, 835 (Mo. App. W.D. 2011)). In 2003, section 430.225 was expanded to include chiropractors such as Skaggs so they could be protected financially like other health care providers. *Id.*

*Huey* is factually analogous to this case and governs our decision here. In *Huey*, a person sought chiropractic treatment following injuries sustained in a car accident. *Id.* at 876. The injured party signed a lien document and an assignment of benefits, which purported to give a chiropractor the right to receive an amount of money arising from a future personal injury lawsuit. *Id.* The language of the lien document described it as a "consensual lien" and "not a statutory lien under Sec. 430.250" and "therefore not restricted by the limitations therein." *Id.* at 877. This Court determined the statutory remedy provided by section 430.225 controlled and was exclusive because it enveloped the remedies provided by common law. *Id.* at 880-81. "The 2003 amendments to the hospital lien statute provide an *exclusive remedy* for health care providers to seek payment out of the proceeds of the personal injury claims of their patients[.]" *Id.* at 881 (emphasis added).

The exclusivity of the remedy provided in Missouri's medical lien statutes was reinforced in **Schoedinger v. Beck**, where the Court stated Missouri's medical lien statutes "establish the procedures hospitals and health practitioners **must** follow to secure a lien to recover amounts due for medical services rendered to a person injured by a tort-feasor." 557 S.W.3d 531, 534 (Mo. App. E.D. 2018) (emphasis added). The Court found the "guaranty" in that case was "preempted by statute" and "superseded by § 430.225" following the reasoning of **Huey** and **McGhee v. Dixon**, 973 S.W.2d 847 (Mo. banc 1998) upon which **Huey** relied. **Schoedinger**, 557 S.W.3d at 535-36. Section 430.225.3 limited the "total amount that **all** healthcare providers may collect from [the person's] settlement in satisfaction of their liens to no more than 50 percent of the settlement." **Id.** at 535-36 (emphasis added).

**Huey** and **Schoedinger** both hold that section 430.225 provides the exclusive remedy for Skaggs as a health care provider attempting to assert a lienholder's priority interest in the settlement proceeds resulting from Ford's personal injury claim. *See* **Huey**, 419 S.W.3d at 881; **Schoedinger**, 557 S.W.3d at 535-36. Because Skaggs had evinced an intent to obtain a lien, regardless of its title, on Ford's potential settlement proceeds, the trial court was required to determine Skaggs' interest by applying section 430.225 to its claim.[5] Section 430.225 supersedes any attempt to contract for a lien on the full amount of the cost of medical services provided to a patient outside of the

---

[5] We reject Skaggs' assertion that its UCC lien should be treated differently because the lien is asserted under a "different statutory scheme" and therefore is given some sort of preferred treatment for payment in full. Skaggs' brief states its lien is asserted under Article 9 of the UCC, but does not identify a specific provision purportedly granting Skaggs authority to assert the lien. Skaggs also does not address section 400-9.109(c)(2), governing "Scope" which states that the provisions do not apply "to the extent that . . . [a]nother statute of this state expressly governs the creation, perfection, priority, or enforcement of a security interest created by this state or a governmental unit of this state[.]" § 400.9-109(c)(2). Because we find section 430.225 provides Skaggs with a specific remedy as a lienholder, we need not address whether the UCC applies in any other way to treatment and diagnosis of a medical patient.

medical lien statute.  *See* **Schoedinger**, 557 S.W.3d at 536; *cf.* **Flipps Nine, Inc. v. Missouri Prop. and Cas. Ins. Guar. Ass'n**, 941 S.W.2d 564, 569 (Mo. App. E.D 1997) ("It is well-settled under Missouri law that an agreement to act in violation of a statute is void and unenforceable.").  Because Skaggs chose to assert a lien for medical services provided as a result of personal injury claims, Skaggs' "exclusive remedy" was found in the medical lien statutes.  **Huey**, 419 S.W.3d at 881.  Point 1 is denied.

*Point 2*

In point 2, Skaggs raises a sufficiency of the evidence challenge to the amount of the lien the trial court found to be enforceable arguing the record is missing evidence of the amount of the attorney's fees and other expenses necessary to make the determination.

Skaggs did not raise the issue of insufficient evidence of attorneys' fees at the hearing before the trial court, nor did it file any motion following the final judgment in this case prior to filing this appeal.  In **Brown v. Brown**, an appellant argued the trial court's award for payment of a guardian ad litem's fees was not supported by substantial evidence.  423 S.W.3d 784, 788 (Mo. banc 2014).  The Supreme Court of Missouri noted there was "nothing in the record to show that [appellant's] counsel . . . objected to the final fee award or properly challenged the award with the trial court in any manner." **Id.**  The Court further stated:

> While Rule 78.07(b) states that, in a court-tried case, "neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review," [the appellant] cannot rely on this rule to excuse him from responsibility for failing to preserve his claim that [the respondent] failed to present substantial evidence to support the fee judgment.  An issue must be presented to the trial court to be preserved for appeal.

7

*Id.* at 788 n.5 (Mo. banc 2014);[6] s*ee also **In re Marriage of Harris***, 446 S.W.3d 320, 324 (Mo. App. S.D. 2014) (noting an issue not presented to or decided by the trial court is not preserved for review).  Rule 78.09 requires the trial court to be given an opportunity to rule on a question.  ***Id.*** (citing ***Brown***, 423 S.W.3d at 787).  Because Skaggs did not raise this issue before the trial court, Skaggs has failed to preserve this allegation of error for review.  Point 2 is denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

DANIEL E. SCOTT, P.J. – CONCURS

---

[6] The phrase "***if the matter was previously presented to the trial court***" was added at the end of Rule 78.07(b) in 2017, presumably in response to the decision in ***Brown v. Brown***.  *See **Fox Creek Constr. Inc. v. Opies Landscaping, LLC***, 586 S.W.3d 831, 838-39 (Mo. App. S.D. 2019) (opinion of Burrell, J. concurring in part and concurring in result).